UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN D. FLEISCHLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1618 CDP |
| | ) | |
| NORTH POLE US, LLC, a Missouri | ) | |
| limited liability company, NORTH | ) | |
| POLE LIMITED, a Hong Kong | ) | |
| corporation, WARBURG PINCUS, | ) | |
| LLC, a New York limited liability | ) | |
| company, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Steven Fleischli is the former CEO of outdoor equipment manufacturer North

Pole Limited.  He brings this suit for breach of contract and six related claims against

his former employer and two other entities.  Fleischli filed suit in Missouri state court

on June 5, 2012.  North Pole Limited removed to this court three months later, with

the consent of its co-defendants, North Pole US, LLC, and Warburg Pincus, LLC.

Now pending before me are Fleischli's motion to remand and the defendants'

motions to dismiss or, alternatively, to compel arbitration.  Because I agree with the

defendants that I have subject matter jurisdiction over this case under the Convention

for the Recognition and Enforcement of Foreign Arbitral Awards, implemented by 9

U.S.C. §§ 201 *et seq.*, I will deny Fleischli's motion to remand.  However, I agree

– 1 –

with Fleischli that this court has personal jurisdiction over each of the defendants, so I will deny the defendants' motions to dismiss for lack thereof.  Finally, for the reasons set forth below, I will compel arbitration and stay the proceedings.

## I.      <u>Citizenship of the Parties</u>

Plaintiff Fleischli is a resident of Missouri.  Defendant North Pole Limited is a Hong Kong corporation with its principal place of business in Kowloon, Hong Kong. Defendant North Pole US, LLC is a Delaware limited liability company with its principal place of business in Missouri.  Defendant Warburg Pincus is a New York limited liability company with its principal place of business in New York.  Fleischli alleges that Warburg controls both North Pole entities through its ownership of a majority of shares, voting stock, corporate officers' positions, and directors' seats.

## II.     <u>Background</u>

At the time the events in this case took place, North Pole Limited was a corporation that manufactured tents and other outdoor equipment.  On March 1, 2010, Fleischli entered into an employment agreement with North Pole Limited and thereby became the company's CEO.  Fleischli also alleges that, at some point, he became a minority shareholder in North Pole Limited.

The employment agreement stated:

[Fleischli's] primary base of operations and office will be located at [North Pole Limited's] Washington, Missouri office.

(Agreement, ¶ 7.)

In addition to describing the parties' duties, the agreement gave Fleischli certain rights if he was terminated without cause.  Namely, it entitled him to 90 days' notice of the termination, as well as nine months' severance pay and various benefits. (*Id.* ¶ 12.)

The employment agreement also contained a mandatory arbitration clause that provided, in relevant part:

> Any and all disputes arising out of or relating to the interpretation or application of this Agreement or concerning [Fleischli]'s employment with [North Pole Limited] or termination thereof, except as set out in Section 26(e),[1] shall be subject to arbitration in accordance with the then existing rules of the American Arbitration Association ("AAA").  Such arbitration may be initiated by either [Fleischli] or [North Pole Limited] by a written notice to the other party demanding arbitration and specifying the controversy, dispute, or claim to be arbitrated. . . .
>
> (a)    Within ten (10) business days after a demand has been made to arbitrate . . . , [North Pole Limited] and [Fleischli] shall select an arbitrator from the panel list provided by AAA. . . .
>
> (b)    Any arbitration hereunder shall be held in Hong Kong or another location mutually agreed to by the parties. . . .  The Arbitrator shall apply the laws of Hong Kong, without regard to the conflicts of law principles of Hong Kong.
>
> (c)    The Arbitrator's decision shall be binding and conclusive on the parties.  The submission of a dispute to the Arbitrator and the rendering of a decision by the Arbitrator shall be a condition precedent to any right of legal action on the dispute.  Judgment upon an arbitrator award may be entered in any court having competent jurisdiction thereof, and shall be binding, final, and non-appealable.

(*Id.* ¶ 26.)

---

[1]   Section 26(e) does not apply to any of the claims at issue in this action.

The agreement further provides that a demand to arbitrate made by Fleischli "shall be deemed to have been duly given if . . . mailed within the continental United States by first class, registered mail . . . and addressed" to Chang Q. Sun on behalf of North Pole Limited.  (*Id.* ¶ 20.)   Sun is the individual who signed the employment agreement as representative of North Pole Limited in his capacity as "Chairman."  (*Id.*, p. 11.)

For two years, Fleischli traveled to and worked in China, Bangladesh, and Canada as North Pole Limited's CEO.  He alleges that sometime during that period, the defendants designated him to the Chinese government as the party responsible for North Pole Limited's financial obligations.[2]  He contends that this was done without his knowledge or consent.

Fleischli alleges that, on May 12, 2012, while he was in China, Warburg falsely accused Fleischli of gross misconduct and terminated his employment with North Pole Limited.  Nonetheless, according to Fleischli, neither Warburg nor the other defendants have informed the Chinese government that Fleischli is no longer financially responsible for North Pole Limited, and the defendants have not replaced him with a new designee.

---

[2]   According to the defendants, Fleischli was in fact the legal representative in China for a North Pole Limited operating subsidiary called North Pole (China) Limited, rather than the Hong Kong corporation, and defendant, North Pole Limited.  At this stage, I will treat Fleischli's version of the facts as true.  Additionally, this question is not material to any determination made herein.

In the meantime, the defendants allegedly defaulted on various financial obligations in China.  Fleischli alleges that as a result, the Chinese government currently is holding his passport because he is still designated as the party responsible for North Pole Limited's financial affairs.  The Chinese government has issued a Departure Prohibition Order against Fleischli and will not permit him to leave the country.

On May 29, 2012, counsel for Fleischli sent, by registered mail and e-mail, an arbitration demand to Chang Sun.  Sun apparently works for Warburg and, at the time of the demand, also served as chairman of the board for North Pole Limited.  The demand stated that it was "made to arbitrate the termination of Mr. Fleischli's employment for cause."  (Pl.'s Ex. 1 to Resp. to Mot. to Dismiss, p. 3.)

The following day, May 30, 2012, counsel for Warburg responded to the demand, stating that Warburg was not party to the employment agreement and that he had forwarded the demand to North Pole Limited's counsel.

Less than a week later, Fleischli filed the instant action in state court, before hearing further response from any of the defendants.  He served the defendants on June 26, 2012.  He claims that North Pole Limited did not timely respond to his arbitration demand so that an arbitrator could be selected within the ten-day period called for by the agreement.  He also claims that North Pole Limited has still not responded to his demand to arbitrate.

– 5 –

## III.   <u>Claims</u>

Fleischli has brought seven claims arising out of the events described above, all under Missouri common law.  Four of the counts seek damages against all three defendants: breach of contract, outrageous conduct, intentional infliction of emotional distress, and civil conspiracy (Counts 1, 5, 6, and 7).  Underlying these claims are Fleischli's allegations that the defendants falsely accused him of misconduct so as to avoid paying his severance pay and benefits; breached the employment agreement by not actually providing severance pay and benefits; and have since failed to inform the Chinese government that he no longer represents North Pole Limited.

In Count 2, brought solely against Warburg, Fleischli alleges that Warburg's "complete dominion and control" over the North Pole entities makes Warburg liable for the North Pole entities' liabilities and warrants piercing the corporate veil.

In Count 3, Fleischli alleges Warburg has breached its duty to him as a minority shareholder of North Pole Limited.

In Count 4, tortious interference with contract, Fleischli alleges that Warburg and North Pole US, LLC, intentionally interfered with his contractual relationship with North Pole Limited and caused it to terminate his employment agreement without just cause or excuse.

## IV.    Discussion

As Fleischli's motion to remand implicates a question of subject matter jurisdiction, I will address it first.  *See Larsen v. Pioneer Hi-Bred Int'l, Inc.*, 4:06CV77, 2007 WL 3341698, at *1 (S.D. Iowa Nov. 9, 2007).  I will then turn to the defendants' motions to dismiss for lack of personal jurisdiction.  Finally, I will discuss the motions to compel arbitration.  Because I conclude that the issue of arbitration is dispositive, I will deny as moot defendants' motions for dismissal for forum non conveniens and – for certain claims – under Rule 12(b)(6).

### A.    Motion to Remand

Federal courts are courts of limited jurisdiction.  *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005).  As such, federal courts are authorized to hear cases only as provided by the Constitution and by statute.  A defendant may remove an action from state court to federal district court if the action is within the federal court's original jurisdiction.  28 U.S.C. § 1441(a).  The removing party has the burden of establishing federal subject matter jurisdiction.  *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).  Any doubt about the existence of federal jurisdiction must be resolved in favor of remand.  *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

In 1970, Congress ratified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention) to ensure that United States citizens would

have predictable enforcement of their arbitration agreements and awards in the courts

of the United States and other signatory nations.  Convention, June 10, 1958, 21

U.S.T. 2517, 330 U.N.T.S. 38.  Congress has implemented the Convention by federal

statute, incorporating it into the Federal Arbitration Act.  *See* 9 U.S.C. §§ 201 *et seq.*

("Convention Act").  Among other things, the Convention Act bestows upon the

federal courts subject matter jurisdiction over actions "falling under the Convention."

9 U.S.C. § 203.

   An action falls under the Convention if it "relates to" a commercial arbitration

agreement "not entirely domestic in scope."  *See id.* §§ 202, 205; *Ministry of Def. of

Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989).  The

Convention Act permits such actions to be removed to the federal courts "at any time

before the trial."  9 U.S.C. § 205.

   This removal right is "substantially broader than that in the general removal

statute."  *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843 (8th Cir. 2012).  Under the

law of this circuit, a case may be removed under Section 205 if the arbitration at issue

"could conceivably affect the outcome of the case."  *Id.* at 844.

   Here, with the consent of its co-defendants, North Pole Limited removed this

action from Missouri state court on September 10, 2012.  The defendants argue that

this action "relates to" the arbitration provision in Fleischli's employment agreement.

That employment agreement, defendants contend, is commercial and signed by a

foreign corporation.  Therefore, this action falls under the Convention, and the defendants had the right to remove until trial.

To this point, Fleischli essentially agrees.  However, he argues that the defendants have waived their right to enforce the arbitration provision.  *See Lewallen v. Green Tree Servicing*, 487 F.3d 1085, 1090 (8th Cir. 2007) (recognizing waiver).  Fleischli contends that a waived arbitration is no arbitration at all, so there is no arbitration that could fall under the Convention – and therefore nothing to convey subject matter jurisdiction upon this court.

The defendants contend that they have not waived their right to arbitrate.  But they also take issue with Fleischli's premise that their right to remove depends on their right to arbitrate.  They argue that – even if they had explicitly waived the right to arbitrate – they would retain their right to remove this action under 9 U.S.C. § 205 unless they waived that right separately and explicitly.  *See Ario v. Underwriting Members*, 618 F.3d 277, 289 (3d Cir. 2010) (waiver of the right to remove under Section 205 must be in "clear and unambiguous language").

I need not decide whether Section 205 would permit a party to remove a case whose only connection to the Convention is a waived arbitration.  In this case, the defendants have not waived their right to arbitrate for the reasons I state *infra*.  Therefore, there remains an active arbitration agreement at issue.

Whether this case "relates to" that arbitration is a straightforward inquiry. Arbitration will necessarily involve interpreting the terms of the employment agreement – the same terms at the heart of Fleischli's breach of contract and other claims.  For example, one of the many questions that the arbitration could answer is whether Fleischli was fired "without cause."  This question falls squarely within the purview of the arbitrator, *see PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 836–37 (8th Cir. 2010), and could dispose of Fleischli's claim to severance pay and benefits, one way or the other.  Even if this were the only overlapping issue, this question alone would be quite enough for this action to surpass the low "relates to" threshold required to fall under the Convention.

In sum, because there exists a commercial arbitration agreement that could conceivably affect the outcome of this case, the defendants have met their burden of showing that federal subject matter jurisdiction exists.  *See Bell*, 557 F.3d at 956. They therefore had the right to remove this case.  *Reid*, 701 F.3d at 844. Accordingly, I will deny Fleischli's motion to remand.

B. **Personal Jurisdiction**

Two conditions must be satisfied before a federal court may exercise personal jurisdiction over a nonresident defendant.  *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).  First, the forum state's long-arm statute must be satisfied.  *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).

– 10 –

Second, the court must determine whether the defendant has sufficient contacts with the forum state to comport with due process. *Johnson*, 614 F.3d at 794. The Eighth Circuit has suggested the long-arm statute and due process inquiries should be analyzed separately. *Viasystems*, 646 F.3d at 593 n.2 (citing *Bryant v. Smith Interior. Design Grp.*, 310 S.W.3d 227, 231 (Mo. banc 2010)).

The reach of Missouri's long-arm statute is a question of Missouri law. *See Scullin Steel Co. v. Nat. Ry. Utilization Corp.,* 676 F.2d 309, 311 (8th Cir. 1982). Accordingly, I must apply the interpretation given the statute by Missouri's highest court. *See id.* Among other things, Missouri's long-arm statute provides for personal jurisdiction over any person or firm who – either in person or through an agent – transacts business, makes a contract, or commits a tort within Missouri. Mo. Rev. Stat. § 506.500.1(1)-(3). The Supreme Court of Missouri has interpreted this statute broadly, reading it to confer jurisdiction to the "full extent" allowed by the Due Process Clause. *State ex rel. Metal Serv. Cntr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

The second condition – that the defendant have "minimum contacts" with the forum state – is based on the general notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts." *J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). A nonresident defendant must therefore have enough contacts with the forum state for it to

– 11 –

"reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

Though sufficient minimum contacts can take many forms, they must include "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Nicastro*, 131 S. Ct. at 2787 (internal quotation marks omitted). These contacts must be such that maintenance of the lawsuit "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen*, 444 U.S. at 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Based on the due process standard espoused by *World–Wide Volkswagen* and *International Shoe* and their progeny, the Eighth Circuit has established a five-factor test to determine the sufficiency of a nonresident defendant's contacts with the forum state. The five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). The first three factors are most important. *Id.*

Two of the defendants, North Pole Limited and Warburg, have moved to dismiss the claims against them for lack of personal jurisdiction. *See* Rule 12(b)(2),

– 12 –

Fed. R. Civ. P.  Both nonresidents of Missouri, they argue that neither Missouri's long-arm statute nor due process is satisfied by their being subject to personal jurisdiction in this court.

### *Personal Jursdiction Over North Pole Limited*

North Pole Limited's motion can be summarily disposed of.  North Pole Limited entered into an employment agreement with Fleischli, a Missouri resident, and that agreement specifies that Fleischli's "primary base of operations and office will be located at [North Pole Limited's] Washington, Missouri office."  (Agreement, ¶ 7; *see also id.*, ¶ 3 (agreement "shall continue in full force and effect" for two years unless sooner terminated)).

By virtue of maintaining a Washington, Missouri office, North Pole Limited transacted business in Missouri.  *See, e.g., Watlow Elec. Mfg. Co. v. Sam Dick Indus., Inc.*, 734 S.W.2d 295, 298 (Mo. Ct. App. 1987) (defendant's single visit to Missouri to finalize a contract constituted the transaction of business).  Therefore, Missouri's long-arm statute is satisfied.

In addition, not only did North Pole Limited maintain this office, but it also acknowledged in the employment agreement that the Washington, Missouri office was Fleischli's "primary base of operations."  As such, it constitutes a long-running and continuous contact closely linked to Fleischli's termination-related causes of actions, and North Pole Limited should have anticipated being haled into court in this

– 13 –

state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (due process allows parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" to be subject to personal jurisdiction in that other state); *see also Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. 1985) (where defendant had two employees stationed in Missouri, it was subject to personal jurisdiction there).

Despite the unambiguous language in the employment agreement, North Pole Limited contends that it does not have any offices in Missouri.  North Pole Limited argues that the language constitutes merely a "casual but incorrect reference."  To support this contention, it has filed two affidavits.  In the first, Darach Haughey, a liquidator for North Pole Limited since July 2012, attests that – to his knowledge – North Pole Limited has never had any offices in Missouri.  In the second, John Kalinowski states that he served as interim CEO of North Pole US, LLC for several months in 2012.  He avers that the Washington, Missouri office at issue was actually an office for defendant North Pole US, LLC, a subsidiary of North Pole Limited (and not North Pole Limited itself).  In support of this attestation, the defendants also offer a lease on the property, showing that North Pole US, LLC was the lessee.

To the extent that these documents support North Pole Limited's position,[3] I find them less persuasive that the employment agreement itself.  The language from

---

[3]   It is not clear that affidavits from two individuals affiliated with North Pole Limited only since after the employment agreement was terminated are particularly useful here.  In addition, there is no

the agreement alone – showing not only that North Pole Limited maintained an office in Missouri but also that it stationed its CEO there – meets Fleischli's burden to make a prima facie showing of personal jurisdiction.  *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (plaintiff's prima facie showing is tested "by the affidavits and exhibits presented with the motions and opposition thereto"); *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (court must "resolve all factual conflicts in the plaintiff's favor" at this stage). Thus, this court's personal jurisdiction over defendant North Pole Limited comports with both Missouri's long-arm statute and the requirements of due process.

### *North Pole Limited Was Served with Process*

If a defendant is not properly served, a federal court lacks jurisdiction over that defendant.  *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d. 882, 885 (8th Cir. 1996).  As process was allegedly served before this case was removed to federal court, Missouri law governs the sufficiency of service.  *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003).  Under Missouri law, a corporation may be served by "leaving . . . copies [of the summons and petition] at any business office of the defendant with the person having charge thereof."  Mo. Sup. Ct. R. 54.13(b)(3); *see also* Mo. Rev. Stat. § 506.150(3); Fed. R. Civ. P. 4(e)(1).

---

reason that North Pole Limited could not maintain an office in a space leased by North Pole US, LLC.  *See* Fleischli Aff., ¶ 8.

Fleischli contends – and the defendants do not contest – that he served the summons and complaint upon the person in charge of the Washington, Missouri office at issue here.  North Pole Limited reasserts, however, that the Washington, Missouri office belongs to its subsidiary North Pole US, LLC, and service upon North Pole US, LLC cannot operate as service upon North Pole Limited.[4]  For the reasons stated above, in addition to the process server's valid return, I find that Fleischli has demonstrated that he served sufficient process on North Pole Limited in accordance with Missouri law.[5]  *See* Mo. Sup. Ct. R. 54.22(a) (return of service is prima facie evidence of the facts recited therein); *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 464 (Mo. Ct. App. 1975) ("It is not a prerequisite for valid service upon a foreign corporation that it be licensed to do business in Missouri, but it is sufficient if it is in fact doing business in this state and is subject to a type of service on corporations as provided by Missouri statutes.").

### *Personal Jursdiction Over Warburg*

Warburg also contends that this court's assertion of personal jurisdiction over it would fail to comport with Missouri's long-arm statute and the requirements of due process.  As the Eighth Circuit has recommended, I will address each prerequisite separately.  *Viasystems*, 646 F.3d at 593 n.2.

---

[4]  Though defendants style their motion otherwise, it is actually a Rule 12(b)(5) motion.  *See* 5B C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE. § 1353 (3d ed.).

[5]  Because this conclusion is dispositive, I do not address Fleischli's argument that North Pole Limited has waived its arguments about the sufficiency of service or North Pole Limited's argument that service upon its subsidiary would not effect service upon it.

As stated above, Missouri's long-arm statute provides for personal jurisdiction over any firm that transacts business, makes a contract, or commits a tort within the state.  Mo. Rev. Stat. § 506.500.  To rely upon the commission-of-tort provision of the Missouri long-arm statute, a plaintiff must make a prima facie showing that a tort was committed.  *Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 899 (Mo. Ct. App. 2000) (citing *State ex rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. banc 1987)).  In other words, the plaintiff "must state sufficient facts in the complaint to support a reasonable inference" of that tort.  *Institutional Food Marketing Assocs., Ltd. v. Golden State Strawberries*, 747 F.2d 448, 453 (8th Cir. 1984).

Here, Fleischli has alleged that, *inter alia*, Warburg tortiously interfered with the employment agreement he signed with North Pole Limited, causing it to breach the agreement.  Under Missouri law, tortious interference with contract consists of the following elements:  (1) a contract; (2) defendant's knowledge of that contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) the absence of justification for that interference; and (5) damages resulting from the defendant's conduct.  *Id.*

In *Golden State Strawberries*, the Eighth Circuit held that the two plaintiffs, both Missouri fruit companies, had not made a prima facie showing that a California strawberry packer tortiously interfered with their contract with each other.  The

plaintiffs' only evidence of the "absence of justification" element was that the defendant had acted in economic self-interest when it interfered with the Missouri companies' contract.  The Eighth Circuit held that this was not enough; the plaintiffs would have had to plead facts allowing for an inference that the packer used "improper means" to induce breach.  *Id.* at 454.

Under *Golden State Strawberries*, it is clear that for this court to assert personal jurisdiction over Warburg under the commission-of-tort provision of the Missouri long-arm statute, Fleischli must allege enough facts for a reasonable inference of the tort to be made.  Fleischli has met that burden.  Like the plaintiffs in *Golden State Strawberries*, Fleischli has alleged that it was in Warburg's economic interest to induce North Pole Limited to breach its employment agreement with him so as to avoid paying severance.  But, he has also alleged facts showing Warburg controlled North Pole Limited's assets and undercapitalized both North Pole entities.  The factual allegations showing control and undercapitalization, when considered in conjunction with the other allegations, are sufficient to permit a reasonable inference that Warburg acted unjustifiably – that is, with "improper means" – in inducing North Pole Limited to breach the employment agreement.

Fleischli has also pled that the breach damaged him because, among other things, he was not paid severance and benefits in accordance with his alleged rights under the contract.  Together with the allegations not controverted (for example, that

– 18 –

Fleischli and North Pole Limited had a contract and Warburg knew of that contract),
this is sufficient to support a prima facie case of tortious interference with a contract.
*See Adams v. USAA Cas. Ins. Co.*, 317 S.W.3d 66, 76 (Mo. Ct. App. 2010) (plaintiff
adequately pled "improper means" by alleging third party acted "in concert" with
party breaching contract).

Whether that tortious interference comports with the commission-of-tort
provision of the Missouri long-arm statute is a separate inquiry.  The long-arm
statute, which is interpreted broadly, covers "extraterritorial acts that yield
consequences in Missouri." *Furminator v. Wahba*, No. 4:10CV1941 AGF, 2011 WL
3847390, at *2 (E.D. Mo. Aug. 29, 2011) (quoting *Bryant*, 310 S.W.3d at 232).  Here,
Fleischli has alleged facts showing Warburg's actions led to consequences within the
state, including his loss of severance.  Therefore, the Missouri long-arm statute is
satisfied.  *See Metal Serv. Cntr.*, 677 S.W.2d at 327.

In addition to comporting with the state long-arm statute, however, personal
jurisdiction must satisfy due process.  *Viasystems*, 646 F.3d at 594; *Bryant*, 310
S.W.3d at 232.  In certain circumstances, due process permits a forum state to assert
personal jurisdiction over a nonresident based on an extraterritorial tort that caused
effects in the forum state.  *Calder v. Jones*, 465 U.S. 783, 791 (1984); *Johnson*, 614
F.3d at 796 (this is known as the "*Calder* effects test").

The *Calder* effects test supplements, but does not replace, the five "minimum contacts" factors. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991). Therefore, to conform to due process, a state may only claim personal jurisdiction based on an extraterritorial tort if the tortious act was (1) "intentional"; (2) "uniquely or expressly aimed at the forum state"; and which (3) "caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Viasystems*, 646 F.3d at 594 (internal quotation marks and brackets omitted).

Here, Fleischli alleges that Warburg intentionally interfered with his contract with North Pole Limited. Fleischli has pled facts permitting a reasonable inference that Warburg directly caused North Pole Limited to breach: for example, according to Fleischli, Warburg controlled a majority of the seats on North Pole Limited's board of directors throughout Fleischli's employment; it owned at least 63 percent of North Pole Limited; and it divested North Pole Limited of substantial assets, limiting its ability to fulfill its obligations.[6] Though North Pole Limited was a Hong Kong corporation, it maintained an office in Missouri at which it stationed its CEO. A Warburg employee signed the employment agreement. When Warburg induced North Pole Limited to breach its contract with Fleischli – an allegation I must take as true at this stage – Warburg knew the brunt of the harm from its alleged tortious

---

[6] Though Warburg submitted affidavits describing the relationship between Warburg and North Pole Limited, none directly contradicts Fleischli's allegations that Warburg controlled North Pole Limited and divested it of its assets.

interference was likely to occur in Missouri.  Because Fleischli, a Missouri resident, did not receive in this state the severance pay and benefits he was allegedly owed, the brunt of the harm did in fact occur here.

Warburg argues that because Fleischli worked in China and remains there now, any harm it caused could not be directed "expressly or uniquely" at Missouri. According to Fleischli, however, the only reason he remains in China is that the Chinese government will not permit him to leave.  He alleges that his inability to return home is a byproduct of the tortious acts Warburg committed.  Therefore, accepting Warburg's argument would force me to conclude that a nonresident defendant could avoid being haled into court in Missouri by causing additional harms elsewhere.  This is not a tenable argument.

Warburg's stake in North Pole Limited and its alleged responsibility for North Pole Limited's actions are important considerations in this jurisdictional determination.  I agree with Warburg's implicit position that the alleged tortious interference alone – even though its effects were directed at Missouri – might not be sufficient to support personal jurisdiction.  But Fleischli has also alleged that Warburg controlled not only North Pole Limited, but also Missouri resident North Pole US, LLC.  Their operations were sufficiently entangled that the management of the Washington, Missouri office apparently remains a disputed issue of fact.  The nature and quality of these contacts, as well as their direct relationship to this action,

demonstrate an intimate "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

In sum, Warburg's alleged control of the North Pole entities, when considered in conjunction with the effects of its alleged interference with the employment agreement, are sufficient contacts with Missouri to meet the demands of the Due Process Clause of the Fourteenth Amendment.

### C. <u>Motion to Compel Arbitration</u>

Each party has moved, in the alternative, to arbitrate the claims underlying this action.[7]  Because I conclude that there is a valid arbitration agreement covering the entirety of this dispute, and that the defendants have not waived their right to arbitrate, I will compel arbitration and stay this action.

### *<u>Validity and Scope of the Arbitration Agreement</u>*

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, "establishes a liberal federal policy favoring arbitration agreements." *M.A. Mortensen Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1156 (8th Cir. 2012).  A court must grant a party's motion to compel arbitration if (1) a valid arbitration agreement exists, and (2) the dispute between the parties "falls within the scope of that agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011). Any doubts concerning the scope of arbitrable issues should be resolved in

---

[7]  Fleischli moves to arbitrate solely with North Pole Limited.

favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

International commercial arbitration agreements that meet certain basic requirements fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, discussed in more detail above.  The Supreme Court has suggested that, under some circumstances, a Convention-covered arbitration clause may be enforceable even where a domestic agreement would not be.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (because of, among other things, the heightened need for predictability, federal policy in favor of arbitration "applies with special force in the field of international commerce"); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538–39 (1995); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519–20 (1974).  In recognition of the special importance of enforcing Convention-covered agreements according to their terms, several circuits have set a lower threshold for determining whether to compel arbitration under such agreements.[8]  *See, e.g.*, *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (court need only ensure that the agreement actually falls under the Convention); *accord*

---

[8]  One of the requirements adopted by these circuits is that the arbitration agreement must "provide for arbitration in the territory of a signatory of the Convention."  *See Smith/Enron*, 198 F.3d at 92. The agreement at issue in this case calls for arbitration in Hong Kong.  (*See* Agreement, ¶ 26.) China, which signed the Convention in 1987, extended the territorial application of the Convention to Hong Kong in 1997, upon its resumption of sovereignty over Hong Kong.  *See* U. N. COMM'N ON INT'L TRADE LAW, *Status of the 1958 Convention*, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

*Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir. 1982) (court's inquiry is "very limited"); *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil (Pemex)*, 767 F.2d 1140, 1144 (5th Cir. 1985) (same).  The Eighth Circuit has not explicitly adopted this narrower inquiry, and I need not do so now because the arbitration agreement at issue here meets the more stringent general test.

The parties all acknowledge the existence and validity of the arbitration agreement.[9]  It is a broadly worded provision embracing any dispute "relating to" the employment agreement or "concerning" either Fleischli's employment or termination.  (*See* Agreement, ¶ 26.)

Fleischli argues, however, that it does not cover certain of his claims.  For example, he points out that (1) he has sued Warburg for breaching its fiduciary duty to him as a minority shareholder, which he alleges is unrelated to his employment as CEO of North Pole Limited; and (2) certain of his claims pertain "at least in part" to actions taken by the defendants after his employment with North Pole Limited had ended.  (Pl.'s Mem. in Opp., p. 6.)

These claims likely still fall within the reach of the arbitration agreement.  For instance, the contours of Warburg's duty to Fleischli as shareholder may depend in part on its relationship with Fleischli's employer, North Pole Limited.  This

---

[9]  Two of the defendants, Warburg and North Pole US, LLC, are nonsignatories to the arbitration agreement.  Nonetheless, they have moved to compel arbitration.  They also join North Pole Limited in arguing that the agreement covers their disputes with Fleischli and that they have not collectively waived their right to arbitrate.  Therefore, for the purpose of discussing the scope of the agreement and its potential waiver, I will treat their arguments together.

possibility is particularly acute because Fleischli has alleged that Warburg is North
Pole Limited's alter ego.  In addition, the employment agreement language may
provide guidance about the defendants' legal obligations to Fleischli after his
termination.  Because I cannot state "with positive assurance" that these claims do not
concern Fleischli's employment or relate to the interpretation of the employment
agreement, I cannot deny the defendants' motion to compel arbitration on this basis.
*Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)
(quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

### *Waiver of the Right to Arbitrate*

Even if a valid arbitration agreement exists, a party can waive its right to
arbitrate by: (1) knowing of that right; (2) acting inconsistently with that right; and
(3) prejudicing the other party through its inconsistent actions.  *Hooper v. Advance
Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 920 (8th Cir. 2009).  One way a
party may act inconsistently with its arbitration right is by "substantially invok[ing]
the litigation machinery," by, for example, initiating litigation and participating in
discovery.  *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991).
A court considers the totality of the circumstances in determining whether a party had
waived its right to arbitrate.  *Hooper*, 589 F.3d at  922.  Like doubts about the scope
of an arbitration agreement, uncertainty about whether a party has waived arbitration

– 25 –

must be resolved in favor of arbitration. *Ritzel Commc'ns, Inc. v. Mid-Am. Cell. Telephone Co.*, 989 F.2d 966, 968–69 (8th Cir. 1993).

Fleischli argues that the arbitration agreement is no longer enforceable because the defendants have waived their right to arbitrate. Specifically, Fleischli contends that the defendants acted inconsistently with their arbitration right by: (1) failing to respond to his arbitration demand; (2) twice seeking more time in state court to respond to his petition before removing this case to federal court; (3) opposing his remand motion "in its entirety," including his alternative request for arbitration; and (4) failing to "move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090.

Assuming that the same tripartite test applies to waiver of a Convention-covered arbitration agreement, none of these acts rises to the level of active or dilatory conduct required to support a finding of waiver. Though a party's failure to respond to an arbitration demand may support a finding of waiver in some circumstances, it cannot do so here. Defendant North Pole Limited argues that the arbitration demand Fleischli sent to its agent was instead supposed to be filed with the American Arbitration Association. Because it explicitly incorporates the AAA rules, the language of the agreement on this point is ambiguous. North Pole Limited's failure to respond to what it reasonably believed was an improper demand was not inconsistent enough with its right to arbitrate as to support a finding of waiver.

– 26 –

The extensions of time sought by the defendants added, in sum, less than three months to the total time this action has been litigated.  The Eighth Circuit has held that a similar delay did not constitute waiver, even where the party seeking to compel arbitration was the same party that filed suit.  *Stifel*, 924 F.2d at 158–59 (where there was no evidence of prejudice, plaintiff did not waive right to arbitrate even though it waited three months until after defendants filed amended counterclaim before moving to compel arbitration); *see also Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886–87 (8th Cir. 2001) (defendant's motion to dismiss on jurisdictional and quasi-jurisdictional grounds, "coupled with its concomitant express warning that it would seek to compel arbitration," were not acts inconsistent with its right to arbitrate).

Further, the defendants have not filed responsive pleadings, participated in discovery, or – like in the case cited by Fleischli – either challenged the validity of the arbitration clause or brought their own judicial action in a different forum.  *See Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd.*, 610 F. Supp. 2d 226, 232 (E.D. N.Y. 2009).  Removing a case to federal court under the Convention does not, on its own, constitute waiver.  *See Lieving v. Cutter Assoc.*, No. 09-2938, 2010 WL 428800, at *5 (D. Minn. Feb. 1, 2010) (defendant employer did not waive right to arbitrate arising from employment agreement where, among other things, it removed plaintiff's judicial action to federal court and filed motion to dismiss or transfer case).

Finally, I conclude that the defendants' opposition to Fleischli's alternative relief cannot support a finding of waiver. The defendants moved to arbitrate just five weeks after removal. Under the circumstances of this case, that five-week delay was not a failure to "move to compel arbitration and stay litigation in a timely manner." *Cf. Lewallen*, 487 F.3d at 1092 (eleven-month delay in seeking to arbitrate was inconsistent with right to arbitrate).

Because the defendants have not acted inconsistently with their right to arbitrate, I need not address the other prongs of the waiver test. The defendants have not waived their right to arbitrate.

### ***Nonsignatory Defendants' Arbitration Rights***

Though the parties have each moved (alternatively) to compel arbitration, their requests are not identical. The defendants argue that they are all entitled to arbitrate the disputes underlying this action, even though two of them – Warburg and North Pole US, LLC – are not signatories to the arbitration agreement. Fleischli, on the other hand, seeks only to arbitrate with signatory North Pole Limited. Though the parties expend considerable space on issues relating to Warburg and North Pole US, LLC's arbitration rights, there is no actual justiciable controversy for me to decide.

First, the parties argue whether a nonsignatory (like Warburg or North Pole US, LLC) can compel a signatory (like Fleischli or North Pole Limited) to arbitrate. This question does not present a "case or controversy" because both signatories have

agreed to arbitrate.  *See* U.S. CONST., Art. III, § 2; *Kennedy v. Ferguson*, 679 F.3d

998, 1001 (8th Cir. 2012).

Second, the parties dispute whether Fleischli could block Warburg and North

Pole US, LLC from participating in arbitration.  I find this doubtful.  *See Dominium*

*Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) (defendant could

not avoid arbitration by arguing plaintiff's partnerships were not party to the

agreement and "at the same time" claim the partnerships were liable for breach of that

same agreement; such a result would be "inequitable"); *PRM Energy*, 592 F.3d at 835

("it would be unfair to allow the signatory to rely on the agreement in formulating its

claims but to disavow availability of the arbitration clause of that same agreement").

At its root, however, this disagreement simply rehashes Fleischli's argument that his

claims against Warburg and North Pole US, LLC are not arbitrable.  To the extent

that this is an appropriate question for this court, I have already addressed it *supra*.

*See Reid*, 701 F.3d at 848; *Lyster*, 239 F.3d at 945.

Finally, Fleischli wonders whether an arbitrator would have the authority to

issue an award for or against Warburg and North Pole US, LLC.  It is well-

established that arbitrators have authority to bind nonsignatories in certain

circumstances.  *See, e.g., Carpenters 46 N. Calif. Counties Conference Bd. v. Zcon*

*Builders*, 96 F.3d 410, 417 (9th Cir. 1996) (arbitration award may be binding on

nonparty to arbitration agreement where nonsignatory adopts the clause; nonsignatory

is alter ego or successor of signing party; or where nonsignatory consents for arbitrator to resolve dispute).  However, Warburg and North Pole US, LLC, have themselves requested arbitration.  It remains only a speculative possibility, dependent on a long series of ifs, that they may later seek to avoid the consequences of doing so. *See Cass Cnty. v. United States*, 570 F.2d 737, 741 (8th Cir. 1978) ("Courts should be reluctant to decide cases that require them to speculate on the basis of hypothetical facts.").  If they do, Fleischli has a judicial avenue at the ready to enforce that award. *See* 9 U.S.C. § 207; *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 20.  In sum, Warburg's and North Pole US, LLC's status as nonsignatories presents no barrier to enforcement of the arbitration agreement.

**D. Stay**

Under the FAA, when a court finds the claims raised in an action are properly referable to arbitration, it should generally stay the action until arbitration proceedings are concluded.  9 U.S.C. § 3; *see also Alghanim v. Alghanim*, 828 F.Supp.2d 636, 643 (S.D. N.Y. 2011) (noting that, under 9 U.S.C. § 208, the stay provision of the FAA applies to actions falling under the Convention).  Accordingly, I will stay this action pending arbitration.

**V.   Conclusion**

I conclude that the Convention, as implemented by federal statute, conveys subject matter jurisdiction over this action.  I also conclude that Fleischli has

established a *prima facie* case that this court has personal jurisdiction over each of the defendants.  Finally, there is a valid, enforceable arbitration agreement; the defendants have not waived their right to arbitrate; and there is no justiciable controversy preventing arbitration by the nonsignatory defendants.  I will therefore compel arbitration and stay this action until arbitration has concluded.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Fleischli's motion to remand [#17] is denied.

**IT IS FURTHER ORDERED** that:

Warburg's motion to dismiss for lack of personal jurisdiction or, alternatively, for forum non conveniens [#27] is denied.

Warburg's motion to compel arbitration and stay proceedings [#29] is granted.

North Pole Limited's and North Pole US, LLC's joint motion to dismiss [#31] is denied.  Its alternative motion to compel arbitration [#31] is granted.

**IT IS FINALLY ORDERED** that the parties shall file a joint status report on the arbitration no later than August 8, 2013, and shall file additional status reports every 90 days thereafter, unless otherwise ordered.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th of May, 2013.

– 31 –